**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DWAYNE BREWER, MARCIA FRANCOIS, KATHLEEN DOYLE-STARK, AND WENDY POINDEXTER, individually and as representatives of a class of participants and beneficiaries on behalf of the CHS/COMMUNITY HEALTH SYSTEMS, INC. WELFARE BENEFIT PLAN,<br><br>        *Plaintiffs,*<br><br>  vs.<br><br>CHS/COMMUNITY HEALTH SYSTEMS, INC., GALLAGHER BENEFIT SERVICES, INC., and JOHN DOES 1–20,<br><br>        *Defendants.* | Case No. 25-cv-15578<br><br>Hon. Joan H. Lefkow |

**DEFENDANT CHS/COMMUNITY HEALTH SYSTEMS, INC.'S**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS'**
**CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................3

   I.     The Plan. ......................................................................................................3

   II.   Plaintiffs' Complaint...................................................................................4

LEGAL STANDARDS ........................................................................................................4

ARGUMENT........................................................................................................................5

   I.    Plaintiffs Lack Article III Standing...........................................................5

      A. Plaintiffs Do Not Allege A Concrete Injury. ........................................6

      B. Plaintiffs Fail to Establish That CHS Caused Their Alleged Injury.....9

      C. Plaintiffs' Alleged Injury is Not Redressable. .....................................10

   II.   CHS Acted as a Settlor When Approving Employee Premiums for VBI...........10

      A. ERISA Fiduciary Status Depends on the Type of Function Being Performed..................10

      B. CHS Acted as a Settlor with Regard to the Conduct at Issue. ...........11

   III.   Plaintiffs Fail to Allege a Plausible Fiduciary Breach Claim (Count I). ...........13

      A. Plaintiffs Offer No Meaningful Benchmark. .....................................14

      B. The Complaint Identifies No Circumstances Suggesting Imprudence. ...........16

   IV.   Plaintiffs Fail to Plausibly Allege a Plausible Prohibited Transactions Claim (Count III) ..................................................................................................17

      A. Plaintiffs Fail to Allege that CHS Acted as an ERISA Fiduciary.....................17

      B. Plaintiffs Fail to Allege a Transaction Between the Plan and a Party in Interest. .............18

      C. Plaintiffs Do Not Allege That CHS Caused the Transaction...........................19

   V.   Plaintiffs Cannot Obtain Relief Pursuant ERISA Section 502(a)(2). ...............19

   VI.   Plaintiffs Cannot Obtain Relief Pursuant to ERISA Section 502(a)(3)............20

CONCLUSION....................................................................................................................22

## TABLE OF AUTHORITIES

Cases

*Adams v. City of Indianapolis*,
   742 F.3d 720 (7th Cir. 2014) ...................................................................................................... 3

*Albert v. Oshkosh Corp.*,
   47 F.4th 570 (7th Cir. 2022) .......................................................................................... 14, 15, 17

*Aldridge v. Regions Bank*,
   144 F.4th 828 (6th Cir. 2025) .................................................................................................. 22

*Am. Freedom L. Ctr. v. Obama*,
   106 F. Supp. 3d 104 (D.D.C. 2015).......................................................................................... 9

*Argay v. Nat'l Grid USA Serv. Co.*,
   503 F. App'x 40 (2d Cir. 2012) ............................................................................................... 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................... 5, 16, 21

*Bator v. Dist. Council 4*,
   972 F.3d 924 (7th Cir. 2020) ................................................................................................... 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................. 5

*Butler v. Obama*,
   814 F. Supp. 2d 230 (E.D.N.Y. 2011) ...................................................................................... 9

*California v. Texas*,
   593 U.S. 659 (2021) ................................................................................................................. 9

*Central States Se. & Sw. Areas Health & Welfare Fund v. Am. Int'l Grp., Inc.*,
   840 F.3d 448 (7th Cir. 2016) .............................................................................................. 21, 22

*Cigna Corp. v. Amara*,
   563 U.S. 421 (2011) ............................................................................................................ 21, 22

*Coulter v. Morgan Stanley & Co. Inc.*,
   753 F.3d 361 (2d Cir. 2014) .................................................................................................... 12

*Curtiss-Wright Corp. v. Schoonejongen*,
   514 U.S. 73 (1995) .................................................................................................................. 11

*Depot, Inc. v. Caring for Montanans, Inc.*,
   915 F.3d 643 (9th Cir. 2019) ................................................................................................... 18

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014) .................................................................................................................. 5

*Friends of the Earth, Inc. v. Laidlaw Env'l Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ................................................................................................................ 10

*Gas Tech. Inst. v. Rehmat*,
  524 F. Supp. 2d 1058 (N.D. Ill. 2007) .................................................................................... 22

*Gonzalez de Fuente v. Preferred Home Care of N.Y.*,
  858 F. App'x 432 (2d Cir. 2021) .............................................................................................. 7

*Great-West Life & Annuity Ins. Co. v Knudson*,
  534 U.S. 204 (2002) ................................................................................................................ 21

*Hughes Aircraft Co. v. Jacobson*,
  525 U.S. 432 (1999) ............................................................................................................ 2, 11

*Hughes v. Nw. Univ.*,
  63 F.4th 615 (7th Cir. 2023) .............................................................................................. 13, 16

*Hughes v. Nw. Univ.*,
  595 U.S. 170 (2022) .................................................................................................................. 5

*Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  719 F.3d 601 (7th Cir. 2013) .................................................................................................... 9

*Kenseth v. Dean Health Plan, Inc.*
  722 F.3d 869 (7th Cir. 2013) .................................................................................................. 22

*Kenseth v. Dean Health Plan, Inc.*,
  610 F.3d 452 (7th Cir. 2010) ............................................................................................ 19, 20

*Knudsen v. MetLife Grp., Inc.*,
  117 F.4th 570 (3d Cir. 2024) .................................................................................................... 7

*Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wisc., Inc.*,
  657 F.3d 496 (7th Cir. 2011) .................................................................................................... 3

*Larson v. United Healthcare Ins. Co.*,
  723 F.3d 905 (7th Cir. 2013) .............................................................................................. 11, 12

*Leimkuehler v. Am. United Life Ins. Co.*,
  713 F.3d 905 (7th Cir. 2013) .................................................................................................. 10

*Lewandowski v. Johnson & Johnson*,
  No. 24-671, 2025 WL 288230 (D.N.J. Jan. 24, 2025) .............................................................. 8

*Lockheed Corp. v. Spink*,
 517 U.S. 882 (1996) ................................................................................................................ 17

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992) ............................................................................................................ 6, 10

*Lysengen v. Argent Tr. Co.*,
 No. 20-1177, 2023 WL 5806203 (C.D. Ill. Sept. 7, 2023) .................................................... 22

*Mass. Mut. Life Ins. Co. v. Russell*,
 473 U.S. 134 (1985) ................................................................................................................ 19

*McCravy v. Metropolitan Life Ins. Co.*,
 690 F.3d 176 (4th Cir. 2012) .................................................................................................. 22

*Mertens v. Hewitt Assocs.*,
 508 U.S. 248 (1993) ................................................................................................................ 21

*Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*,
 577 U.S. 136 (2016) ............................................................................................................ 21, 22

*N.R. v. Raytheon Co.*,
 24 F.4th 740 (1st Cir. 2022) .................................................................................................... 19

*Navarro v. Wells Fargo & Co.*,
 No. 24-3043, 2026 WL 591454 (D. Minn. Mar. 3, 2026) ......................................... 6, 7, 10, 20

*Orgone Cap. III, LLC v. Daubenspeck*,
 912 F.3d 1039 (7th Cir. 2019) .................................................................................................. 3

*Pegram v. Herdrich*,
 530 U.S. 211 (2000) ............................................................................................. 10, 11, 12, 13

*Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
 712 F.3d 705 (2d Cir. 2013) ...................................................................................................... 5

*Pharm. Care Mgmt. Ass'n v. Mulready*,
 78 F.4th 1183 (10th Cir. 2023) ............................................................................................... 12

*Rose v. PSA Airlines, Inc.*,
 80 F.4th 488 (4th Cir. 2023) ................................................................................................ 20, 22

*Rush v. Greatbanc Trust Co.*,
 No. 19-cv-00738, 2025 WL 975214 (N.D. Ill. Mar. 31, 2025) ............................................... 12

*Silha v. ACT, Inc.*,
 807 F.3d 169 (7th Cir. 2015) .................................................................................................... 4

*Smith v. Med. Benefit Adm'rs Grp., Inc.*,
639 F.3d 277 (7th Cir. 2011) ..................................................................................................... 6, 19

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......................................................................................................................... 6

*Stern v. JPMorgan Chase & Co.*,
No. 1:25-cv-02097, 2026 WL 654714 (S.D.N.Y. Mar. 9, 2026)................................................. 8

*Taylor v. McCament*,
875 F.3d 849 (7th Cir. 2017) ......................................................................................................... 4

*Thole v. U.S. Bank N.A.*,
590 U.S. 538 (2020) ..................................................................................................................... 5, 6

*United Paperworkers Int'l Union v. Jefferson Smurfit Corp.*,
771 F. Supp. 992 (E.D. Mo. 1991), *aff'd*, 961 F.2d 1384 (8th Cir. 1992)............................... 12

*Winsor v. Sequoia Benefits & Ins. Servs. LLC*,
62 F.4th 517 (9th Cir. 2023) .............................................................................................. 7, 8, 13, 20

## Statutes

29 U.S.C. § 1001...................................................................................................................................... 1

29 U.S.C. § 1002(21)(A)...................................................................................................................... 10

29 U.S.C. § 1104(a)(1)(A) ................................................................................................................... 11

## Rules and Regulations

29 C.F.R. § 2509.75-8(D-2)................................................................................................................ 17

**INTRODUCTION**

In their putative class action, Plaintiffs allege that CHS/Community Health Systems, Inc. ("CHS") and a broker it hired, Gallagher Benefits Services, Inc. ("Gallagher"), breached their fiduciary duties under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"), in connection with voluntary benefits insurance ("VBI") coverage that was made available to CHS employees under the CHS/Community Health Systems, Inc. Welfare Benefit Plan (the "Plan").

VBI is exactly that—*voluntary*. Employees may choose to purchase this optional coverage to receive fixed cash benefits for events such as accidents, hospitalization, or critical illness. Plaintiffs elected to enroll in the VBI coverages offered by the Plan, but now allege they paid "excessive premiums relative to the benefits received," Dkt. 1, Complaint ("Compl.") ¶ 150, because the VBI insurer—*a third-party*—paid Gallagher too much in commissions, id. ¶ 78. Plaintiffs claim that commissions "impact premiums . . . dollar-for-dollar." *Id.* ¶ 77.

Plaintiffs do not allege how their premiums compare to premiums charged for comparable VBI coverages offered by comparable plans. Instead of comparing premium rates, Plaintiffs compare the *commissions* that Gallagher received from different VBI insurers in connection with its services to different plans. Plaintiffs also claim that the Plan's VBI coverages had a "loss ratio" that was too low. Those metrics are irrelevant to the question at hand: whether the *premiums* charged to Plan participants were too high "relative to the benefits received." Compl. ¶ 150. Plaintiffs' ERISA claims against CHS fail.

*First,* Plaintiffs fail to establish any element of Article III standing. Plaintiffs do not allege an injury-in-fact because they received all promised benefits and their allegation that they paid too much in premiums is entirely speculative. Nor can Plaintiffs establish causation or redressability. Plaintiffs' theory of the case rests entirely on the assumption that the insurer would lower

premiums *if* it lowered the amount of commissions it paid to Gallagher. But Plaintiffs plead *no* facts that plausibly give rise to an inference that such a result would follow here.

*Second*, CHS acted as the Plan's settlor—not as an ERISA fiduciary—when it selected the group insurance contracts and made the VBI coverages available for purchase at the insurer-set premium rates. Employers act as settlors when making plan design decisions such as determining a plan's package of benefits. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999).

*Third*, Plaintiffs do not plausibly allege that CHS breached any fiduciary duties under ERISA. The Complaint provides no meaningful benchmark for the premiums Plaintiffs paid— that is, Plaintiffs do not identify *premiums* charged by a *comparable plan* for *comparable coverages*.

*Fourth*, Plaintiffs fail to allege that CHS engaged in a transaction prohibited by ERISA. The only "transaction" they identify is the insurer's payment of commissions to Gallagher—a transaction that (1) did not involve a fiduciary act by CHS or Gallagher, (2) did not involve the Plan, (3) did not involve Plan assets, and (4) was not caused by CHS.

*Finally*, the relief Plaintiffs seek is unavailable under ERISA's civil enforcement mechanisms. Section 502(a)(2) permits suits to remedy losses to the plan as a whole, yet Plaintiffs allege only that Plan participants who elected VBI coverages were injured by the conduct at issue. And, Section 502(a)(3) authorizes only equitable relief tied to specific property in a defendant's possession, but Plaintiffs seek to hold CHS liable for money it never received.

For any and all of these reasons, and as further discussed below, Counts I–III should be dismissed in their entirety and with prejudice.

## BACKGROUND

**I.      The Plan.**

CHS sponsors the Plan[1] for its employees.  The Plan offers a variety of coverages, including life, accidental death and dismemberment, and short and long-term disability insurance coverage; business travel insurance coverage; group dental and vision insurance coverage; and voluntary critical illness, hospital indemnity, and accident insurance coverage.  *See* Exs. 3–8 (identifying coverages for Plan Years[2] 2019–2024); Ex. 2 at A-1 (identifying coverages for Plan Year 2025).[3]

The VBI coverages are fully insured.[4]  Enrollment in the VBI coverages is entirely voluntary—CHS makes the coverages available and employees decide each year whether they would like to purchase any (or all) of the VBI coverages for the Plan Year.  The VBI coverages offer participants "lump-sum" or "fixed" monetary benefits when a certain condition occurs.  Compl. ¶¶ 40, 44–47.  Premiums for the VBI coverages are entirely paid by employees.

---

[1] The Court may consider the Plan documents and the Plan's Form 5500s at this stage because they are "referred to in [Plaintiffs'] complaint and are central to [their] claim."  *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) (citations and alteration omitted).  In ERISA cases, courts routinely hold that a plan's governing documents may be considered on a motion to dismiss.  *See, e.g.*, *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wisc., Inc.*, 657 F.3d 496, 501 (7th Cir. 2011).  CHS has accordingly attached as exhibits relevant excerpts from (1) the Community Health Systems, Inc. Welfare Benefit Plan (Exs. 1–2) and the amendments thereto (Exs. 3–8); (2) the Group Hospital Indemnity, Accident, and Critical Illness Insurance Policies (Exs. 9–11); and (3) a sample Form 5500 filed by the Plan (Ex. 12).

[2] The "Plan Year" is January 1-December 31.  *See* Ex. 1, § 2.13; Ex. 2, § 2.13.

[3] Contrary to Plaintiffs' allegation, Compl. ¶ 99 n.29, the Plan does not cover medical benefits. *See* Ex. 1, § 1.02 ("This Plan does not incorporate the Community Health Systems, Inc. Group Health Plan."); Ex. 2, § 1.02 (same).  This point is evidenced by the fact that the Health Plan files a separate Form 5500 under a different plan number.  *See, e.g.*, Ex. 13.   The Court may take judicial notice of this public record.  *See Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019).

[4] In a fully insured arrangement, the insurance company takes on the financial obligation to pay claims in exchange for the receipt of premiums.  The insurance company takes on the risk/reward of claim experience.

Gallagher provides brokerage services concerning the Plan. *See id.* ¶ 31. As relevant here, Gallagher obtained proposals on behalf of CHS from various insurance carriers for VBI. The insurers' proposals identified (1) the quality and scope of the coverages offered and (2) the applicable premium rates. CHS had the final authority to select the winning proposal. *See* Ex. 1, § 5.04; Ex. 2, § 5.04. CHS selected American Heritage Life Insurance Company, a subsidiary of Allstate ("Allstate"), as the VBI insurer. *See* Compl. ¶ 102. In return for its services, Gallagher earned compensation, including commissions that were paid by the insurer, Allstate. *See id.* ¶ 78.

## II.     Plaintiffs' Complaint.

Plaintiffs allege they paid "excessive premiums relative to the benefits received"—because the insurer paid Gallagher "excessive commissions." Compl. ¶¶ 78, 150, 224. Plaintiffs' allegations are built on the unsupported and conclusory assumption that "[c]ommissions to brokers impact premiums to participants dollar-for-dollar." *Id.* ¶ 77.

As to CHS, Plaintiffs' Complaint asserts three claims for relief under ERISA sections 502(a)(2) and 502(a)(3): (1) breach of ERISA's fiduciary duty of prudence due to CHS's alleged failure to "control premiums or broker commissions" for VBI (Count I); (2) failure to monitor Plan fiduciaries (Count II); and (3) prohibited transactions by selecting and retaining Gallagher as a broker and "causing Plan assets to be transferred to Gallagher" (Count III). Compl. ¶¶ 3, 186–219.

## LEGAL STANDARDS

Plaintiffs' Complaint should be dismissed because Plaintiffs fail to establish Article III standing. "As the party invoking federal jurisdiction, a plaintiff bears the burden of establishing the elements of Article III standing." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). A motion to dismiss for lack of Article III standing is considered under Federal Rule of Civil

Procedure 12(b)(1). *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017). A "facial" challenge to Article III standing is evaluated on the sufficiency of the pleadings. *See Silha*, 807 F.3d at 173.

Even if the Court finds that Plaintiffs have established Article III standing, Plaintiffs' Complaint should be dismissed for failure to state a claim. To survive a motion to dismiss, Plaintiffs must plead "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Courts must take "particular care" in applying these standards to ERISA claims because "the prospective of discovery" in an ERISA class action is "ominous." *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718–19 (2d Cir. 2013). Courts therefore must engage in "careful, context-sensitive scrutiny of a complaint's allegations." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). Recognizing that "the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs," the Supreme Court has instructed that, at the motion to dismiss stage, "courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022).

<strong><u>ARGUMENT</u></strong>

**I. <u>Plaintiffs Lack Article III Standing.</u>**

Plaintiffs must establish Article III standing for each of their ERISA claims. *See Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020) ("There is no ERISA exception to Article III."). To do so, Plaintiffs must establish that (1) they "suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) the injury was caused by [CHS], and (3) the injury would likely be

5

redressed by the requested judicial relief." *Id*. at 540 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Plaintiffs fail to satisfy *any* of these requirements.[5]

### A. Plaintiffs Do Not Allege A Concrete Injury.

Plaintiffs' claims collapse at the threshold because they fail to allege the "first and foremost" requirement of Article III standing—an injury-in-fact. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016).

*First*, Plaintiffs fail to allege an Article III injury because they do not dispute they received all of the benefits owed by the defined-benefit coverages at issue. Plaintiffs admit that the VBI coverages offered defined benefits—that is, participants paid premiums in exchange for a contractually-delineated set of coverages. *See* Compl. ¶¶ 40, 44–47. Welfare plans, like group health plans, are akin to defined benefit plans because they "hold[] no assets in trust for any individual participant." *Smith v. Med. Benefit Adm'rs Grp., Inc*., 639 F.3d 277, 284 (7th Cir. 2011). As a result, they are a "kind of defined benefit plan." *Id.*; *see also Navarro v. Wells Fargo & Co.*, No. 24-3043, 2026 WL 591454, at *10 (D. Minn. Mar. 3, 2026) (holding that a health plan "is closely analogous to a defined-benefit plan in which participants are entitled to their contractually defined benefits regardless of the value of the Plan's assets" (citation modified)).

That the Plan's VBI coverage offered defined benefits is of "decisive importance" to whether Plaintiffs have Article III standing. *Thole*, 590 U.S. at 540. In *Thole*, the Supreme Court held that participants lack standing to challenge the management of defined benefit plans where they receive all promised benefits and do not allege any substantial risk that future benefits will not be paid. *Id.* at 543–46. Courts have subsequently held that plaintiffs lack standing to sue where, as here, they have received the benefits they were promised under a defined benefit health

---

[5] CHS joins and incorporates Part I of Gallagher's Memorandum in Support of its Motion to Dismiss.

plan and do not otherwise allege that any fiduciary breach affected their promised benefits. *See, e.g.*, *Winsor v. Sequoia Benefits & Ins. Servs. LLC*, 62 F.4th 517, 528 (9th Cir. 2023) (plaintiffs lacked standing to challenge allegedly excessive premiums because the "plaintiffs were contractually entitled to the insurance benefits that [defendant] agreed to purchase for them with the program's funds—benefits that plaintiffs have received"); *Gonzalez de Fuente v. Preferred Home Care of N.Y.*, 858 F. App'x 432, 434 (2d Cir. 2021) (plaintiffs lacked standing because they "did not allege that they were denied any health benefits promised under the plan, nor did they allege that the plan was insolvent or otherwise incapable of continuing to provide covered health benefits"); *Navarro*, 2026 WL 591454, at *9 (plaintiffs lacked standing to challenge premiums because, *inter alia*, they received all promised benefits and did not allege the plan was insolvent).

The same rationale applies here. Plaintiffs do not allege that any promised benefit was denied or underpaid, or that the insurer cannot (or may not) satisfy future claims. Plaintiffs claim they "overpaid" for the VBI coverages, Compl. ¶ 142—but Plaintiffs do not dispute that they paid the prices quoted to them and they identify no Plan term that promises that coverage will be made available at a specific price. *Cf. Knudsen v. MetLife Grp., Inc.*, 117 F.4th 570, 582 (3d Cir. 2024) (holding that participants failed to allege they had an "individual right" to prescription drug rebates such that their employer's "purportedly unlawful retention of the [rebates] harmed Plaintiffs"); *Bueno v. Gen. Elec. Co.*, No. 24-cv-0822, 2025 WL 2719995, at *12 (N.D.N.Y. Sept. 24, 2025) (holding that participants lacked standing to challenge pension risk transfer where, *inter alia*, they did not have a "guaranteed right" to have their pensions continue to be administered by defendants or any other provider). As a result, Plaintiffs do not allege a concrete injury.

***Second***, Plaintiffs' allegation that they paid "excessive premiums relative to the benefits received," Compl. ¶ 150, is entirely speculative. Plaintiffs do ***not*** identify premiums charged by a

7

***comparable plan*** for ***comparable coverages***. *See infra* Part III. Conclusory allegations that plaintiffs paid "more in premiums," without any "allegation or evidence of premiums o[f] other plans," are insufficient to establish standing. *Lewandowski v. Johnson & Johnson,* No. 24-671, 2025 WL 288230, at \*4 (D.N.J. Jan. 24, 2025).

Plaintiffs attempt to establish a "dollar-for-dollar" nexus between premium rates and commission rates, *see*, *e.g.*, Compl. ¶ 77, but their own allegations undermine this premise. Between 2021 and 2022, for example, Gallagher's commissions decreased by \$597,154, yet premiums increased by \$780,637. *See id.* ¶ 158. And, in 2023 and 2024, Gallagher's commissions increased, yet premiums decreased.[6] Because Gallagher's commissions, when measured as a percentage of premiums varied each year, Plaintiffs' alleged correlation between premiums and commissions is too speculative to establish standing. *See Winsor*, 62 F.4th at 524 (holding that the plaintiffs failed to establish standing based on the allegation that excessive commissions resulted in excessive premiums because, *inter alia*, the plaintiffs did not allege that "employee contribution rates are tied to overall premiums"); *Stern v. JPMorgan Chase & Co.*, No. 1:25-cv-02097, 2026 WL 654714, at \*7 (S.D.N.Y. Mar. 9, 2026) ("If dramatic swings in total plan spending did not produce corresponding reductions or increases in participant contributions, the Court cannot plausibly infer that lower prescription-drug costs would necessarily have resulted in lower contributions.").[7]

---

[6] In 2023, Gallagher's commissions increased by \$239,230, yet premiums decreased by \$420,982. *Id.* ¶ 158. In 2024, Gallagher's commissions increased by \$883,816, yet premiums decreased by \$438,511. *Id.*

[7] None of the Plaintiffs elected cancer coverage. *See* Compl. ¶¶ 13–16. As a result, they lack standing to assert any ERISA claims related to coverage they never elected—they do not allege to have suffered any injury as a result of CHS making the cancer coverage available for purchase.

**B. Plaintiffs Fail to Establish That CHS Caused Their Alleged Injury.**

Plaintiffs also fail to establish causation, *i.e.*, that their alleged injury is "fairly traceable to [CHS]'s allegedly unlawful conduct." *California v. Texas*, 593 U.S. 659, 669 (2021).

Plaintiffs claim injury from a transaction to which CHS was not a party—the insurer's payment of commissions to Gallagher. *See* Compl. ¶ 78. The ***insurer*** determines how to price its products[8] and compensate brokers who market them, including the commissions brokers receive. *See Butler v. Obama*, 814 F. Supp. 2d 230, 240 (E.D.N.Y. 2011) ("[I]nsurance companies have broad discretion in the setting of premiums."). And, Plaintiffs do ***not*** allege that Gallagher's commissions were the ***only*** factor the insurer considered when setting premiums. Nor could they. Courts have recognized that "premiums fluctuate for myriad reasons, ranging from the particular terms of coverage to various other actuarial factors." *Am. Freedom L. Ctr. v. Obama*, 106 F. Supp. 3d 104, 109 (D.D.C. 2015).

The Complaint does not allege ***any*** facts demonstrating that ***CHS*** controlled the third-party insurer's decisions regarding (1) how much the ***insurer*** charged in premiums and (2) the amount of commissions the ***insurer*** paid to Gallagher. *See generally* Compl. Plaintiffs' theory of injury layers assumption upon assumption—first, CHS controlled the insurer's decisions to set premiums and pay commissions to Gallagher; second, the insurer would lower its premiums if the insurer paid Gallagher lower commissions; and third, any reduction in premiums charged to Plan participants by the insurer would be "dollar-for-dollar." Plaintiffs do not allege any facts to support their assumptions, and they cannot establish causation based on speculation about "the independent action of some third party not before the court." *Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 719 F.3d 601, 602 (7th Cir. 2013).

---

[8] The group insurance contracts issued by the insurer identify (1) the scope of covered benefits, (2) the premiums for coverage and (3) the rules regarding premiums. *See, e.g.*, Exs. 9–11.

### C. Plaintiffs' Alleged Injury is Not Redressable.

For the same reasons that Plaintiffs cannot establish causation, their alleged injury is too "conjectural" to be redressable. *Navarro*, 2026 WL 591454, at \*10. Plaintiffs allege ***no*** facts supporting the proposition that the insurer would lower participant premiums if it paid less in commissions to Gallagher. *See generally* Compl. Standing cannot rest on speculation about the choices of third parties. *See Friends of the Earth, Inc. v. Laidlaw Env'l Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (plaintiffs must show "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" (citing *Lujan*, 504 U.S. at 560–61)).[9]

## II.   CHS Acted as a Settlor When Approving Employee Premiums for VBI.

### A. ERISA Fiduciary Status Depends on the Type of Function Being Performed.

Plaintiffs fail to state a claim under ERISA for breach of fiduciary duty or a prohibited transaction because they do not allege that CHS was acting as an ERISA fiduciary with regard to (1) CHS's selection of the VBI group insurance contracts or (2) the insurer-set premium rates.

The "threshold question" in "every case charging breach of ERISA fiduciary duty" is whether the defendant was "acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). As relevant here, a person is a functional fiduciary "***to the extent*** (i) he exercises any discretionary authority or discretionary control respecting management . . . or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A) (emphasis added).

A fiduciary "owes a duty to a plan through its actions." *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 914 (7th Cir. 2013). "ERISA's functional definition of fiduciary [] means

---

[9] Plaintiffs' ERISA section 502(a)(2) claims also are not redressable because any relief would inure to the benefit of the Plan, not Plaintiffs. *See infra* Part V.

that an ERISA fiduciary does not always wear the fiduciary hat." *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 917 (7th Cir. 2013) (quotation omitted).

Employers act as fiduciaries when they are "acting in the capacity of [a] manager, administrator, or financial adviser to a 'plan.'" *Pegram*, 530 U.S. at 222. An ERISA "plan" is a "scheme [that is] decided upon in advance," *i.e.*, it is a "set of rules that define the rights of a beneficiary and provide for their enforcement." *Id.* at 223. When an employer manages or administers this "scheme," it acts as a fiduciary. *See id.* That is, the employer has the duty to act "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A).

Employers are as settlors, and not ERISA fiduciaries, when deciding to adopt, modify, or terminate a plan, *see Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995), or when making plan design decisions, *i.e.*, "decision[s] regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts," *Hughes Aircraft Co.*, 525 U.S. at 444; *see also Pegram*, 530 U.S. at 226 ("The specific payout detail of the plan was, of course, a feature that the employer as plan sponsor was free to adopt without breach of any fiduciary duty under ERISA, since an employer's decisions about the content of a plan are not themselves fiduciary acts."). That is because ERISA "does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits." *Curtiss-Wright*, 514 U.S. at 78.

### B. CHS Acted as a Settlor with Regard to the Conduct at Issue.

CHS acted as the Plan's settlor, and not an ERISA fiduciary, when it made decisions about the coverages made available under the Plan, including its decision to select the VBI group insurance contracts. This plan design decision dictated the Plan's "form" and "structure"—*i.e.*, the "content of the [P]lan." *Hughes Aircraft Co.*, 525 U.S. at 444; *Pegram*, 530 U.S. at 226.

11

CHS also did not act as an ERISA fiduciary with regard to the insurer-set premiums. The premiums are part and parcel of the VBI coverages—that is, the insurer agrees to make the certain benefits available *if* participants pay the purchase price the insurer sets. *See, e.g.*, Ex. 9 at 3 (identifying coverages and premium rates); *see also supra* n.4. CHS had *no* role in setting the premiums—nor do Plaintiffs allege that it did. *See generally* Compl.

Regardless, even if CHS had set the premiums (it did not), that would not have been a fiduciary act. Courts have repeatedly held that employers act as settlors, and not ERISA fiduciaries, when setting employee contribution and out-of-pocket cost-sharing amounts for health and welfare coverage. *See Larson*, 723 F.3d at 908 ("Setting policy terms, including copayment requirements, determines the *content* of the policy, and 'decisions about the content of [the] plan are not themselves fiduciary acts.'" (quoting *Pegram*, 530 U.S. at 226)); *Argay v. Nat'l Grid USA Serv. Co.*, 503 F. App'x 40, 42 (2d Cir. 2012) (holding that the defendants "did not act in a fiduciary capacity in setting premiums" for a welfare plan); *United Paperworkers Int'l Union v. Jefferson Smurfit Corp.*, 771 F. Supp. 992, 999 (E.D. Mo. 1991) (holding that an employer acted in a settlor capacity when increasing retiree health insurance premiums where the plan reserved the employer's right to terminate, amend or modify the retiree medical benefits plan), *aff'd*, 961 F.2d 1384 (8th Cir. 1992); *see also Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1201 (10th Cir. 2023) (holding that a "plan's prescription-drug benefit design comprises the formulary, cost-sharing terms, and pharmacy network"), *cert. denied*, 145 S. Ct. 2843 (2025).[10] Consistent with

---

[10] In the analogous context of defined benefit pension plans, the Seventh Circuit has held that setting contribution amounts is settlor activity. *See Bator v. Dist. Council 4*, 972 F.3d 924, 932 (7th Cir. 2020) ("When a union sets, changes or enforces contribution rates, the union acts as a settlor . . . ."); *see also Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 367 (2d Cir. 2014) ("Non-fiduciary duties generally include 'decisions related to the timing and amount of contributions.'" (quoting Lee T. Polk, ERISA Practice and Litigation § 3:32 (2013))); *Rush v. Greatbanc Trust Co.*, No. 19-cv-00738, 2025 WL 975214 at *15 (N.D. Ill. Mar. 31, 2025) ("[A]n ERISA fiduciary does not act in a fiduciary capacity . . . when acting as a settlor who sets, changes, or enforces contribution rates . . . ." (quotations and citations omitted)).

this caselaw, the Department of Labor has expressly stated that an "employer acts as a settlor" when "setting contribution rates" and copayment amounts for a health plan. Br. of the U.S. Dep't of Labor as Amicus Curiae at 25 & n.5, *Winsor v. Sequoia Benefits & Ins. Servs. LLC*, (9th Cir. 2023) (No. 21-16992) (Ex. 14 hereto).

That CHS acted as a settlor with regard to the (1) selection of the VBI group insurance contracts and (2) insurer-set premium rates is recognized in the Plan's terms. The Plan expressly provides that CHS has the authority to select the group insurance contracts made available under the Plan. *See* Ex. 1, § 5.01 (the "Employer may secure and maintain, and may replace or substitute," group insurance contracts to provide welfare benefits); Ex. 2 § 5.01 (same). Further, the Plan makes clear that the terms of those contracts—including the "conditions of payment," *i.e.*, premium rates—are incorporated into the Plan's terms. Ex. 1, § 5.04 (the group insurance contracts pursuant to which benefits are provided under the Plan, including the contracts' "conditions of payment," are "incorporated by reference into and made a part of this Plan"); Ex. 2, § 5.04 (same); *see also* Ex. 1, § 5.03 (participants are required to pay the cost of benefits "in a manner consistent with the provisions of any Group Insurance Contract"); Ex. 2 § 5.03 (same). As a result, the settlor-selected group insurance contracts and their applicable premium rates are part of the Plan itself—the "scheme [that is] decided upon in advance." *Pegram*, 530 U.S. at 226.

### III.     Plaintiffs Fail to Allege a Plausible Fiduciary Breach Claim (Count I).

Even if CHS was acting as an ERISA fiduciary, Plaintiffs allege no facts that plausibly give rise to the inference that CHS's decision to offer the VBI coverages at the insurer-set premium rates was "outside a range of reasonableness." *Hughes v. Nw. Univ.*, 63 F.4th 615 (7th Cir. 2023) ("*Hughes II*"). Plaintiffs assert conclusory allegations about CHS's fiduciary process, invite the Court to infer imprudence from inapt comparisons to industry averages and three dissimilar plans,

13

and cite extensively to a blog written under pseudonym. This is insufficient to plead a breach of ERISA's fiduciary duty of prudence.[11]

### A. Plaintiffs Offer No Meaningful Benchmark.

Without any direct allegations of imprudence, Plaintiffs are required to assert "allegations as to the quality or type" of services provided by a "comparable plan" to plead an imprudence claim. *Albert v. Oshkosh Corp.*, 47 F.4th 570, 579 (7th Cir. 2022). Just because a plan paid more for a service in comparison to a "potentially random assortment" of other plans is insufficient to plausibly allege a claim for relief—"the cheapest [] option is not necessarily the one a prudent fiduciary would select." *Id.*

Plaintiffs fail to measure the very thing they claim was excessive: ***premiums***. Plaintiffs instead compare the ***commissions*** Gallagher received relative to (supposed) industry averages and in connection with Gallagher's (supposed) services to three other plans. *See, e.g., id.* ¶¶ 144–45, 159–61. But those comparisons miss the mark. Premiums are what participants pay for VBI coverage; commissions reflect how third-party insurers compensate brokers. Plaintiffs assert no allegations regarding the ***premiums*** charged by any comparator plan. *See generally id*. That failure alone defeats Plaintiffs' attempt to plead imprudence. *See Albert*, 47 F.4th at 579.

Even if broker commissions were relevant to whether premiums were excessive (they are not, *see supra* Part I(A)-(B)), the commissions Plaintiffs challenge fall within the range that Plaintiffs themselves describe as "typical." Plaintiffs allege that broker commissions for VBI generally range from 15% to 55% of premiums. Compl. ¶ 81.[12] Yet the commissions they attribute to the Plan (22.65%) are squarely in middle of that range. *Id.* ¶ 158.

---

[11] CHS joins and incorporates Part III of Gallagher's Memorandum in Support of its Motion to Dismiss.

[12] The source for Plaintiffs' claim that voluntary insurance offers "commission[s] . . . of an additional 15 percent to 55 percent, depending on the line of insurance offered[,]" Compl. ¶ 81, is an unvetted blog

Plaintiffs plead no facts giving rise to the inference that the purported "comparators" identified in Paragraphs 159–161 of the Complaint are apt comparators for the VBI coverages offered by the Plan. A valid benchmark for the Plan's VBI coverages would be (1) coverages that are materially identical to the Plan's VBI coverages (2) that are offered by comparably-sized plans. *See Albert*, 47 F.4th at 581–82 (requiring comparators to be materially alike). The only facts Plaintiffs allege about their supposed "comparators" are that (1) they have substantially fewer participants than the Plan, (2) they offered voluntary benefits coverages, (3) the voluntary benefits coverages were insured by carriers other than Allstate, and (4) Gallagher provided brokerage services concerning the plans. *See* Compl. ¶¶ 159–61.

Plaintiffs assert ***no*** allegations regarding the ***quality*** of the "comparator" coverages—for example, the types of claims that are covered under the policies and the level of coverage offered (*i.e.*, the amount of the "lump-sum or fixed" benefits, Compl. ¶ 40). Given that the "comparator" coverages are insured by different carriers, it is certainly reasonable to conclude the level of coverage offered is not an "apple-to-apple" comparator with the coverages offered by the Plan. *See Albert*, 47 F.4th at 582 (requiring that a plaintiff provide a meaningful benchmark to plead an imprudence claim). Plaintiffs can hardly claim that they overpaid in premiums ***"relative to the benefits received,"*** Compl. ¶ 150 (emphasis added), when they make no effort to compare the quality of the Plan's VBI coverages to those offered by other plans, *id*. ¶¶ 159–61.

In sum, Plaintiffs have not pleaded "the kind of context that could move this claim from possibility to plausibility." *Albert*, 47 F.4th at 580 (quotation omitted).

---

purportedly written by "Dagny Taggart"—which is the name of a character from Ayn Rand's *Atlas Shrugged*. Compl. ¶ 80 n.17. The same unvetted and questionable source also supplies Plaintiffs' allegations that the insurance industry views VBI programs as a "quick fix" and that insurers can afford high-commission products only by raising premiums or denying claims. *Id.* ¶ 82.

### B. The Complaint Identifies No Circumstances Suggesting Imprudence.

Plaintiffs' conclusory allegations about CHS's fiduciary process, *see, e.g.*, Compl. ¶¶ 112–18, also are insufficient to plausibly plead an imprudence claim. *See Iqbal*, 556 U.S. at 678.

The fact that CHS retained the same insurer (Allstate) and broker (Gallagher) during the time period at issue, *see* Compl. ¶ 115, does not imply misconduct. Plaintiffs baldly assert that CHS "failed to use competitive bidding," *id.* ¶ 197, but the Seventh Circuit has rejected the notion that the absence of competitive bidding implies imprudence. *See Hughes II*, 63 F.4th at 631. Nor does ERISA require fiduciaries to replace effective plan service providers.

Similarly, the fact that CHS filed amended Forms 5500, Compl. ¶¶ 108, 118, does not give rise to an inference that CHS acted imprudently with regard to its decision to make the VBI coverages available to employees for purchase at the insurer-set premium rates. Nor does it reflect on the quality of services that Gallagher provided. *Id*. ¶ 150. To the contrary, all this fact demonstrates is that CHS made a reporting error, which it corrected.[13]

Plaintiffs' fixation on "loss ratios," Compl. ¶¶ 87–98, 146–48, is a red herring. Plaintiffs do not allege that loss ratios have any relationship to premiums or commissions. *See generally* Compl. Plaintiffs admit that loss ratios measure an insurer's profitability, *see id*. ¶ 87, and that the statutory loss-ratio requirements they cite are inapplicable here, *see id*. ¶¶ 91–96. And, Plaintiffs' "estimat[ion]" that the Plan's VBI had a "true historical loss ratio" of "less than 50%," *id*. ¶ 147, is just that—an estimate based on speculation. Plaintiffs could not accurately estimate the loss

---

[13] Plaintiffs' claim that CHS "never filed a separate Form 5500 for the Plan," Compl. ¶ 110, evidently is predicated on the erroneous assumption that the Plan also covered medical benefits. *See supra* n.3. The Plan regularly filed Forms 5500. *See, e.g.*, Ex. 12.

ratio of the Plan's VBI coverages without knowing the value of the claims that Allstate paid under the group insurance contracts—a figure they do not allege in the Complaint.[14]

**IV.     Plaintiffs Fail to Allege a Plausible Prohibited Transactions Claim (Count III).**

Count III alleges that "CHS caused the Plan" to engage prohibited transactions "with Gallagher" in violation of ERISA section 406(a)(1). Compl. ¶¶ 215–17. Section 406(a)(1) is designed to prevent "commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length." *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996). These prohibited transactions "generally involve uses of plan assets that are potentially harmful to the plan." *Id*. Plaintiffs do not allege such a transaction here.

**A.  Plaintiffs Fail to Plausibly Allege that CHS Acted as an ERISA Fiduciary.**

Plaintiffs' prohibited transaction claim fails because neither CHS nor Gallagher acted as a fiduciary with regard to participant premiums or Gallagher's commissions.[15] As previously explained, CHS acted as a settlor when selecting the VBI coverages and making them available at the insurer-set premium rates. *See supra* Part II(B). CHS likewise did not act as an ERISA fiduciary when collecting premiums consistent with the Plan's terms—this is ministerial conduct that is not subject to ERISA. *See* 29 C.F.R. § 2509.75-8(D-2) (the "[c]ollection of contributions and application of contributions as provided in the plan" is a ministerial act).

CHS's "select[ion] and ret[ention] of Gallagher as the broker," Compl. ¶¶ 215–17, has nothing to do with the matters which supposedly caused Plaintiffs' payment of "excessive

---

[14] Because Plaintiffs have not plausibly alleged any breach of fiduciary duty by CHS, their monitoring claim fails as a matter of law. *See Albert*, 47 F.4th at 583. Count II should therefore be dismissed.

[15] Gallagher was not an ERISA fiduciary to the Plan for the reasons explained in Part II of Gallagher's Memorandum in Support of Motion to Dismiss, which CHS incorporates herein.

premiums"—that is, the insurer's pricing of its coverages and its decision to pay Gallagher commissions. The *insurer* has complete authority over these decisions.

Plaintiffs' allegation that CHS "caus[ed] Plan assets to be transferred to Gallagher as payment for premiums and/or commissions," *id*., is devoid of any factual support.[16] Plaintiffs do not identify the "Plan assets" that CHS purportedly "caus[ed]" to be transferred to Gallagher, nor when or why such a transfer occurred. To the extent Plaintiffs are implying that CHS transferred participant premiums to Gallagher, their allegation is factually incorrect—the insurance policies make clear that CHS paid premiums directly to the insurer.[17] And, when such payments were made to the insurer, the premiums ceased to be plan assets. *See Depot, Inc. v. Caring for Montanans, Inc*., 915 F.3d 643, 657 (9th Cir. 2019) ("Premiums paid to an insurance company in return for coverage under a fully insured insurance policy are not 'plan assets.'").[18]

**B. Plaintiffs Fail to Allege a Transaction Between the Plan and a Party in Interest.**

Plaintiffs identify no transaction involving the Plan. Plaintiffs admit that the *insurer*—not the Plan—paid Gallagher's commissions. *See* Compl. ¶ 78 (admitting that "Gallagher's commissions were [] paid by . . . the insurance company"). This is confirmed by the Plan's Forms 5500, *see, e.g.*, Ex. 12 at .pdf pages 26-29, which report Gallagher's commissions under Line 3(b), *i.e.*, commissions that are *"paid by an insurer."* *2025 Instructions for Form 5500* at 24, DEP'T OF LABOR, available at https://www.dol.gov/sites/dolgov/files/ebsa/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/form-5500/2025-instructions.pdf (last visited

---

[16] Plaintiffs' conclusory allegation that the commissions "came directly out of Plan participants' premium payments," Compl. ¶ 143, is contrary to their admission that the insurer paid the commissions, *id*. ¶ 78.

[17] *See, e.g.*, Ex. 10 at 3A ("The *policyholder* [CHS] must send all premiums on or before the premium due date to us." (Emphasis added)); Ex. 11 at 3A (same); Ex. 9 at 3 (requiring that "[a]ll premiums must be sent to us on or before the premium due date").

[18] CHS joins and incorporates Part IV of Gallagher's Memorandum in Support of Motion to Dismiss.

18

Mar. 27, 2026) (stating that the amounts to be reported in line 3(b) are "sales and/or base commissions" and "monetary amounts *paid by an insurer* that are charged directly to the contract or policy and that are paid to a licensed agent or broker for the sale or placement of the contract or policy" (emphasis added)). The only "transaction" at issue is between the insurer and Gallagher.

### C. Plaintiffs Do Not Allege That CHS Caused the Transaction.

Plaintiffs also do not plausibly allege that *CHS* caused the insurer's payment of commissions to Gallagher. The Complaint does not allege that CHS directed, required, or otherwise caused the insurer to pay Gallagher commissions. *See generally* Compl. If anything, the *insurer* made that decision after Plan participants voluntarily purchased the coverages.

### V. Plaintiffs Cannot Obtain Relief Pursuant ERISA Section 502(a)(2).

To the extent Plaintiffs' claims are predicated on violations of ERISA section 502(a)(2), they fail because Plaintiffs do not allege that the purported fiduciary breaches caused harm *to the Plan*. Section 502(a)(2) only authorizes claims "brought in a representative capacity on behalf of the plan as a whole," in the interest of the "financial integrity of the plan." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985).

Losses to an individual plan participant or a class of participants are insufficient to allege a section 502(a)(2) claim. *See Smith*, 639 F.3d at 282 (holding that the plaintiff failed to allege a section 502(a)(2) claim where his "complaint [was] plainly aimed at obtaining relief for injuries that he, rather than his plan, suffered as a result of [the defendant's] alleged actions"); *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 482 (7th Cir. 2010) ("*Kenseth I*") (holding that a participant could not bring a section 502(a)(2) claim "to recover for the injuries that [the defendant] has caused her rather than to the plan as a whole"); *see also N.R. v. Raytheon Co.*, 24 F.4th 740, 751 (1st Cir. 2022) (holding that the plaintiff's claims could not be brought under section 502(a)(2) because the

19

"only losses alleged [we]re benefits which were not paid out to [plaintiff] and putative class members" and the plaintiff did "not allege any losses to the Plan itself").

Plaintiffs allege that only Plan participants who elected VBI suffered an injury. *See* Compl. ¶ 165 (defining the putative class to include only those participants who enrolled in VBI); *see also id*. ¶¶ 99–110 (admitting that only a fraction of Plan participants enrolled in VBI). Plaintiffs do ***not*** allege that enrollees in any other type of Plan coverage paid excessive premiums. *See generally id.* Because Plaintiffs fail to allege an injury to the Plan, Plaintiffs' claims should be dismissed to the extent they are predicated on section 502(a)(2).

Moreover, Plaintiffs' section 502(a)(2) claims are not redressable. If the Court enters a judgment in Plaintiffs' favor, then any amounts awarded would go back to ***the Plan***. *See Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 494 (4th Cir. 2023) ("[R]ecovery under § 502(a)(2) goes to the plan, not to the beneficiary bringing the action. . . . [I]f the beneficiary wants to recover directly . . . then she would need to sue under a different provision of § 502's enforcement scheme."). "[N]othing in the plan documents or in law" would require CHS to distribute the funds to those Plan participants who elected VBI or to reduce those participants' contributions for VBI going-forward. *Winsor*, 62 F.4th at 527; *see also Navarro*, 2026 WL 591454, at *10 (holding that the plaintiffs failed to "advance any persuasive argument that ERISA authorizes the Court to order [defendant] to lower participant contribution amounts prospectively when the Plan's terms give [defendant] the exclusive authority to set those amounts").

## VI.     Plaintiffs Cannot Obtain Relief Pursuant to ERISA Section 502(a)(3).

To the extent Plaintiffs' claims are predicated on violations of ERISA section 502(a)(3), they fail because Plaintiffs demand relief that is not available pursuant to that cause of action. Section 502(a)(3) "imposes an important limitation on the type of relief that is available:  it allows only injunctive and 'other appropriate equitable relief.'"  *Kenseth I*, 610 F.3d at 482.

20

The Supreme Court has explained that "appropriate equitable relief" means "those categories of relief that were *typically* available in equity"—*i.e.*, "injunction, mandamus, and restitution." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993). "[W]hether a remedy is available under section 502(a)(3) 'depends on (1) the basis for the plaintiff's claim and (2) the nature of the underlying remedies sought'; both must be equitable to proceed under section 502(a)(3)." *Central States Se. & Sw. Areas Health & Welfare Fund v. Am. Int'l Grp., Inc.*, 840 F.3d 448, 453 (7th Cir. 2016) (quoting *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142 (2016)).

"[M]oney damages, the epitome of legal relief," are unavailable under section 502(a)(3). *Central States*, 840 F.3d at 454. Monetary relief is available pursuant to the doctrine of equitable restitution but *only* "where money or property identified as belonging in good conscience to the plaintiff c[an] be clearly traced to particular funds or property in the defendant's possession." *Great-West Life & Annuity Ins. Co. v Knudson*, 534 U.S. 204, 213 (2002).

At bottom, Plaintiffs demand the return of the "excess" premiums and/or commissions. *See* Compl. ¶ 249. But Plaintiffs cannot obtain such relief from CHS under the doctrine of equitable restitution because they do not allege that CHS was unjustly enriched by excess commissions or that such funds are (or were ever) held by CHS.[19] *See Central States*, 840 F.3d at 453 (no equitable relief where the plaintiff "c[ould not] point to specifically identifiable funds in the insurers' possession because the insurers never received any funds at all").

Plaintiffs cannot avoid this result by demanding surcharge. *See* Compl. ¶ 249(h). Although the Seventh Circuit has held that a "make-whole" surcharge remedy is available under section

---

[19] Plaintiffs' allegation that CHS "received improper benefits in connection with the excessive commissions," Compl. ¶¶ 30, is devoid of *any* factual support. *See Iqbal*, 556 U.S. at 678.

502(a)(3), *Kenseth v. Dean Health Plan*, *Inc.* 722 F.3d 869, 882 (7th Cir. 2013) ("*Kenseth II*"), it did so in reliance on dicta from *Cigna Corp. v. Amara*, 563 U.S. 421 (2011). But after *Kenseth II* was decided, the Supreme Court acknowledged that its "discussion of § 502(a)(3) in *CIGNA* was not essential to resolving that case" and underscored that equitable relief requires that "the funds in question [are] particular funds or property in the defendant's possession." *Montanile*, 577 U.S. at 148 n.3 (quotation omitted). Following *Montanile*, other circuit courts have held that surcharge is ***not*** a remedy available under ERISA section 502(a)(3). *See Aldridge v. Regions Bank*, 144 F.4th 828, 847–49 (6th Cir. 2025); *Rose*, 80 F.4th at 504.[20] CHS submits that those decisions are persuasive and the Court should follow them here.[21] As a result, Plaintiffs' ERISA section 502(a)(3) claims against CHS fail. *See Central States*, 840 F.3d at 454–55 (affirming dismissal of section 502(a)(3) claim demanding legal relief).[22]

## CONCLUSION

For all of the reasons stated above, CHS respectfully requests that Counts I–III be dismissed in their entirety and with prejudice.

---

[20] *Kenseth II* also relied on *McCravy v. Metropolitan Life Ins. Co.*, 690 F.3d 176, 181 (4th Cir. 2012) to hold that surcharge is available under section 502(a)(3). But in *Rose*, the Fourth Circuit abrogated *McCravy's* holding that a make-whole surcharge is available under section 502(a)(3). *See* 80 F.4th at 504.

[21] Even if surcharge is available under section 502(a)(3), Plaintiffs are not entitled to receive it from CHS. Even after *Kenseth II*, the Seventh Circuit has continued to hold that equitable relief requires the identification of traceable funds in the defendant's possession, *Central States*, 840 F.3d at 453, and courts have dismissed surcharge claims where plaintiffs fail to establish traceability, *see, e.g.*, *Lysengen v. Argent Tr. Co.*, No. 20-1177, 2023 WL 5806203, at *2, *7 (C.D. Ill. Sept. 7, 2023). Plaintiffs do not allege that CHS ever received the excess commissions at issue. *See generally* Compl.

[22] Plaintiffs' claim for an accounting, Compl. ¶ 249(f), or "an adjustment of the accounts of the parties and rendering of judgment for the balance ascertained to be true," *Gas Tech. Inst. v. Rehmat*, 524 F. Supp. 2d 1058, 1073 (N.D. Ill. 2007) (internal quotation marks omitted), also fails because Plaintiffs do not plausibly allege that CHS profited from the alleged fiduciary breach. *See generally* Compl.; *see also* Accounting for Profits, Black's Law Dictionary (11th ed. 2019) ("An action for equitable relief against a person in a fiduciary capacity to recover profits taken in a breach of the relationship."). Plaintiffs' claim for reformation of the Plan, Compl. ¶ 249(i), fails because Plaintiffs do not allege that any fraud or mistake occurred with regard to the VBI coverages. *See Cigna*, 563 U.S. at 440.

Dated: March 27, 2026

Respectfully submitted,

By: */s/ Mark C. Nielsen*
Mark C. Nielsen (no. 90785769)
Daniel J. Cohen (no. 6329558)
Lars C. Golumbic*
Kara Petteway Wheatley*
Colleen J. Harrison*
Groom Law Group, Chartered
1701 Pennsylvania Ave., NW, Suite 1200
Washington, DC 20006
Phone: 202-861-6615
Fax: 202-659-4503
mnielsen@groom.com
dcohen@groom.com
lgolumbic@groom.com
KWheatley@groom.com
charrison@groom.com

*Counsel for Defendant CHS/Community Health Systems, Inc.*

*Admitted pro hac vice

23

**CERTIFICATE OF SERVICE**

I, Mark C. Nielsen, hereby certify that, on March 27, 2026, I caused the foregoing to be filed electronically using this Court's CM/ECF system, thereby serving such filing on all registered participants identified in the Notice of Electronic Filing in this matter on this date.

/s/ *Mark C. Nielsen*_____
Mark C. Nielsen

24