**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DWAYNE BREWER, MARCIA FRANCOIS, KATHLEEN DOYLE-STARK, AND WENDY POINDEXTER, individually and as representatives of a class of participants and beneficiaries on behalf of the CHS/COMMUNITY HEALTH SYSTEMS, INC. WELFARE BENEFIT PLAN,<br>    *Plaintiffs*,<br>     v.<br>CHS/COMMUNITY HEALTH SYSTEMS, INC., GALLAGHER BENEFIT SERVICES, INC., and JOHN DOES 1-20,<br>    *Defendants*. | Case No. 25-cv-15578<br>Honorable Joan Humphrey Lefkow |

**GALLAGHER'S MEMORANDUM IN SUPPORT OF**
**ITS MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) AND 12(b)(6)**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................................1

ALLEGATIONS AND FACTUAL BACKGROUND...........................................................3

LEGAL STANDARD ...........................................................................................................4

ARGUMENT .........................................................................................................................6

      I.       Plaintiffs Cannot Establish Article III Standing.........................................................6

            A.       No Injury-in-Fact ..........................................................................................6

            B.       No Harm Fairly Traceable to Gallagher.........................................................9

      II.      Plaintiffs Fail to Plausibly Allege Gallagher is a Fiduciary...................................10

      III.     Plaintiffs Fail to Allege Breach of Fiduciary Duty Against Gallagher..................................................................................................................15

      IV.     Plaintiffs Fail to Allege that Gallagher Engaged in a Prohibited Transaction............................................................................................................16

      V.      Plaintiffs' Knowing Participation Claims Also Fail...............................................18

      VI.     Conclusion ..............................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Servs. Of N. Illinois v. Capitol Adm'rs, Inc.*,
No. 19-cv-50050, 2021 WL 780483 (N.D. Ill. Mar. 1, 2021) .................................................12

*Acosta v. AEU Benefits, LLC*,
No. 17 C 7931, 2019 WL 8301677 (N.D. Ill. May 13, 2019) .................................5, 9, 11, 13

*Albert v. Oshkosh Corp.*,
47 F.4th 570 (7th Cir. 2022) .................................................................................5, 7, 15, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................14

*Associates in Adolescent Psychiatry, S.C. v. Home Life Ins. Co.*,
941 F.2d 561 (7th Cir. 1991) ...............................................................................................13

*Cason v. Nat'l Football League Players Ass'n*,
538 F. Supp. 3d 100 (D.D.C. 2021) .....................................................................................10

*Chao v. Day*,
436 F.3d 234 (D.C. Cir. 2006)...............................................................................................13

*Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
474 F.3d 463 (7th Cir. 2007) ...............................................................................................14

*Cunningham v. Cornell Univ.*,
604 U.S. 693 (2025)............................................................................................................6, 17

*Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*,
No. 17-CV-07243-BLF, 2019 WL 6841222 (N.D. Cal. Dec. 16, 2019) ................................20

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019) ........................................................................................ *passim*

*Dinerstein v. Google, LLC*,
73 F.4th 502 (7th Cir. 2023) ...........................................................................................4, 5, 6

*Esco v. City of Chicago*,
107 F.4th 673 (7th Cir. 2024) ...............................................................................................20

*Farm King Supply, Inc. Integrated Profit Sharing Plan & Tr. v. Edward D. Jones
& Co.*,
884 F.2d 288 (7th Cir. 1989) ...........................................................................................11, 12

ii

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014)..............................................................................................2, 13

*Gallagher Corp. v. Massachusetts Mut. Life Ins. Co.*,
    105 F. Supp. 2d 889 (N.D. Ill. 2000) ...................................................................3, 12

*Gonzalez de Fuente v. Preferred Home Care of New York LLC*,
    858 F. App'x 432 (2d Cir. 2021).................................................................................6

*Guise v. BWM Mortg., LLC*,
    377 F.3d 795 (7th Cir. 2004) ...................................................................................20

*Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*,
    530 U.S. 238 (2000)............................................................................................18, 20

*Holmes v. Marion Cnty. Sheriff's Off.*,
    141 F.4th 818 (7th Cir. 2025), *reh'g denied*, No. 22-3032, 2025 WL 2078828
    (7th Cir. July 23, 2025) ............................................................................................17

*Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    719 F.3d 601 (7th Cir. 2013) ...................................................................................10

*Keach v. U.S. Tr. Co. N.A.*,
    313 F. Supp. 2d 818 (C.D. Ill. 2004), *aff'd sub nom*, 419 F.3d 626 (7th Cir.
    2005) .........................................................................................................................10

*Klosterman v. W. Gen. Mgmt., Inc.*,
    32 F.3d 1119 (7th Cir. 1994) ...................................................................................12

*Lewandowski v. Johnson & Johnson*,
    No. CV 24-671, 2025 WL 3296009 (D.N.J. Nov. 26, 2025)................................7, 8

*Mejia v. Verizon Mgmt. Pension Plan*,
    No. 11 C 3949, 2012 WL 1565336 (N.D. Ill. May 2, 2012) ..............................18, 20

*Navarro v. Wells Fargo & Co.*,
    No. 24-cv-3043, 2026 WL 591454 (D. Minn. Mar. 3, 2026) .......................... *passim*

*Neil v. Zell*,
    No. 08 C 6833, 2010 WL 3167293 (N.D. Ill. Aug. 9, 2010)....................................19

*Pappas v. Buck Consultants, Inc.*,
    No. 89 C 6137, 1989 WL 157517 (N.D. Ill. Dec. 12, 1989), *aff'd*, 923 F.2d
    531 (7th Cir. 1991)............................................................................................11, 12

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)..................................................................................................14

iii

*Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers Ret. Plan v.*
*Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013).......................................................................................5, 16

*Scott v. Aon Hewitt Fin., Advisors, LLC*,
No. 17 C 679, 2018 WL 1384300 (N.D. Ill. Mar. 19, 2018) .............................................13, 18

*Silha v. ACT Inc.*,
807 F.3d 169 (7th Cir. 2015) .......................................................................................5, 8

*Smith v. Med. Benefit Adm'rs Grp. Inc.*,
639 F.3d 277 (7th Cir. 2011) .......................................................................................6

*Thole v. U.S. Bank N.A.*,
590 U.S. 538 (2020).................................................................................................6, 9, 12

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
62 F.4th 517 (9th Cir. 2023) .......................................................................................6

**Statutes**

29 U.S.C. § 1002(21)(A)........................................................................................11, 12, 14

29 U.S.C. § 1106(b)(1), (3)........................................................................................16

29 U.S.C. § 1108........................................................................................................17

**Other Authorities**

Rule 12(b)(1)............................................................................................................2, 4

Rule 12(b)(6)............................................................................................................5

iv

**INTRODUCTION**

This lawsuit is one in a series filed against employers and insurance brokers concerning the voluntarily benefits offered with the employer's health and welfare plan. Voluntary benefits have existed for decades to provide Americans with income replacement during medical emergencies. As its name suggests, voluntary benefits are *voluntary* for both employers (who act as plan sponsors) and participants. There is no legal obligation to offer or enroll in these benefits. While insurance brokers like Defendant Gallagher Benefits Services, Inc. ("Gallagher") present these options to plan sponsors, plan sponsors *voluntarily* determine whether and which products to make available to plan participants, and plan participants *voluntarily* choose whether to enroll.

Plaintiffs are current or former CHS/Community Health Systems ("CHS") employees who allege they purchased voluntary benefits in connection with the CHS/Community Health Systems, Inc. Welfare Benefit Plan (the "Plan"). Plaintiffs allege that CHS and Gallagher violated ERISA through the offering of these products because they cost too much and Gallagher received unreasonable commissions from non-party insurer American Heritage Life Insurance Company, a subsidiary of Allstate ("Allstate"), which somehow led to participants purchasing an inferior product. For several reasons, the Complaint is deficient as to Gallagher:

First, Plaintiffs cannot meet *their burden* of demonstrating Article III standing. Plaintiffs do not claim that they failed to receive benefits due and owing under the terms of the voluntary benefits policies they selected. And, while Plaintiffs conclusorily allege they paid above-market premiums for their voluntary benefits, they offer *no facts* to support that barebones conclusion. Perhaps realizing this deficiency, Plaintiffs alternatively claim that they suffered injury because Gallagher received allegedly above-market commissions. Not only is Plaintiffs' excessive commission theory contradicted by the documents cited in the Complaint, but Gallagher's

1

commissions have *no connection* to the premiums that Plaintiffs paid (and Plaintiffs do not plausibly allege otherwise). Nor do Plaintiffs offer any plausible support that their voluntary benefits were inherently inferior due to Gallagher's commissions or that Gallagher caused Plaintiffs' unidentified loss, given that Plaintiffs admit it was *CHS*—not Gallagher—that decided to offer the products to participants. By all accounts, Plaintiffs' claims should be dismissed under Rule 12(b)(1) as to Gallagher.

Second, several claims against Gallagher are premised upon the false assumption that Gallagher acted as an ERISA fiduciary in connection with CHS's voluntary benefits. But, Seventh Circuit precedent is clear: as a service provider, Gallagher is *not an ERISA fiduciary*. Plaintiffs do not allege that Gallagher exercised the necessary discretion or control over the Plan or its assets to disrupt that general rule. The Complaint's conclusory allegations as to Gallagher's fiduciary status should therefore be disregarded.

Third, even if Gallagher somehow acted as an ERISA fiduciary (and it did not), Plaintiffs fail to plausibly allege facts in support of their fiduciary-based claims as to Gallagher. Plaintiffs do not plausibly allege, for instance, that Gallagher was paid with plan assets or that it recommended a market-inferior product for use by CHS.

Finally, Plaintiffs fail to plead plausible knowing participation claims against Gallagher. Because knowing participation claims are derivative in nature, both of Plaintiffs' knowing participation claims against Gallagher fail because their underlying fiduciary breach and prohibited transactions claims against CHS fail. In any event, Plaintiffs fail to plausibly allege, as they must, that Gallagher knew that CHS engaged in an ERISA violation. Finally, the monetary relief that Plaintiffs seek is not available for these claims.

2

At their core, Plaintiffs' claims against Gallagher are nothing more than critiques of voluntary benefits products generally and the industry that sells them. Plaintiffs cannot show that they suffered a concrete injury fairly traceable to *Gallagher*, and their limited factual allegations cannot support the weight of their legal conclusions. The Court should therefore dismiss the Complaint as against Gallagher *with prejudice* because further amendment would be futile.

## ALLEGATIONS AND FACTUAL BACKGROUND

Accident, critical illness, and hospital indemnity insurance, among other voluntary benefits products, allow participants to manage the risk of "financial distress that may occur in the case of unexpected injuries, illnesses, and hospitalizations." Compl. ¶ 42. Because medical insurance does not pay certain expenses incurred during an illness or injury, these products help "close the gap between traditional health insurance coverage and additional medical costs." *Id*. ¶ 41. Individual consumers have long been able to directly purchase voluntary benefits. Compl. ¶ 48. Many employers also offer these products as an optional group benefit, which often results in lower premiums.[1] *See id*. As with other types of insurance, participants pay premiums for voluntary benefits. In return, insurance carriers pay fixed amounts, lump sums, or daily benefits upon a qualifying event, all based on the terms of the voluntary benefits policies. *See* Compl. ¶¶ 44–47.

Like the majority of employers, CHS offers its employees the opportunity to purchase supplemental accident, critical illness, cancer, and hospital indemnity insurance (the "Voluntary Benefits") as separate options within its Plan. Compl. ¶¶ 51, 2. Plaintiffs allege that Allstate is the insurance carrier and that CHS is the Plan sponsor, administrator, and named ERISA fiduciary for

---

[1] *See generally* Julia Kagan, *Understanding Group Health Insurance: Coverage, Benefits, Costs, and More*, INVESTOPEDIA (Feb. 11, 2026), https://www.investopedia.com/terms/g/group-health-insurance-plan.asp ("The primary advantage of a group plan is that it spreads risk across a pool of insured individuals. This benefits the group members by keeping premiums low, and insurers can better manage risk when they have a clearer idea of who they are covering.").

the Voluntary Benefits. *Id*. 19–20, 102. During the relevant period, CHS hired Gallagher as a consultant and insurance broker. Compl. ¶ 78. Gallagher worked with CHS on CHS's Voluntary Benefits design. *See id.* 102–103. CHS ultimately decided which products to offer. *See* Compl. ¶ 112.

In the Complaint, Plaintiffs claim they paid excessive premiums for their Voluntary Benefits, although Plaintiffs do not compare their premiums to those for similar products. Plaintiffs also claim Gallagher received excessive commissions on the Voluntary Benefits. According to Plaintiffs, Allstate paid Gallagher approximately $3 million per year in commissions and fees related to the Voluntary Benefits. Compl., Table 1. While Plaintiffs claim that Gallagher's total commissions paid by Allstate can be expressed as 22.65% of participant premiums, Plaintiffs acknowledge that percentage is at the low-end of the range of broker commissions. *Id*.; *id*. ¶ 81. Finally, Plaintiffs suggest the Voluntary Benefits were inherently inferior due to its "loss ratio," although Plaintiffs do not plausibly assert harm stemming from any alleged loss ratio.[2] Notably, no Plaintiff alleges that any of his or her claims were denied or that he or she did not receive the benefits promised under the terms of the Voluntary Benefits policies.

The Complaint contains four counts against Gallagher under ERISA: breach of the fiduciary duty of prudence (Count I) and engaging in prohibited transactions (Count IV), both of which require the defendant to be an ERISA fiduciary, and knowing participation in a fiduciary breach (Count V) and knowing participation in prohibited transactions (Count VI).

## LEGAL STANDARD

A court does not have subject matter jurisdiction under Rule 12(b)(1) if a plaintiff lacks Article III standing. *Dinerstein v. Google, LLC*, 73 F.4th 502, 511 (7th Cir. 2023). Plaintiffs have

---

[2] A loss ratio is calculated by dividing the total "claims paid [by the insurer] plus [its] loss adjustment expenses" by the total premiums paid by participants. Compl. ¶ 88.

the burden to establish that they "suffered (1) a concrete, particularized, and actual or imminent injury (an "injury in fact") (2) that is fairly traceable to the defendant and (3) that is likely to be redressed by a favorable judicial decision." *Id*. (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). A concrete injury "must actually exist," meaning it must be real and "not abstract." *Id*. (internal quotations omitted).

Additionally, "[i]n putative ERISA class actions, Rule 12(b)(6) motions are an 'important mechanism for weeding out meritless claims' [and] Courts apply a 'careful, context-sensitive scrutiny of a complaint's allegations' to 'divide the plausible sheep from the meritless goats.'" *Albert v. Oshkosh Corp*., 47 F.4th 570, 577 (7th Cir. 2022) (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)). ERISA complaints, in particular, require careful scrutiny because "the prospect of discovery" in an ERISA class action is "ominous" and "elevates the possibility that a plaintiff with a largely groundless claim will simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.'" *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc*., 712 F.3d 705, 719 (2d Cir. 2013) (citation modified).

"To survive a Rule 12(b)(6) motion, the complaint must . . . establish that the requested relief is plausible on its face. The allegations in the complaint must be 'enough to raise a right to relief above the speculative level.'" *Acosta v. AEU Benefits, LLC*, No. 17 C 7931, 2019 WL 8301677, at *2 (N.D. Ill. May 13, 2019) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) and citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts should disregard conclusory allegations unsupported by well-pled facts. *Silha v. ACT Inc*., 807 F.3d 169, 174 (7th Cir. 2015) (citing *Iqbal*, 556 U.S. at 679). The *Twombly-Iqbal* facial plausibility requirement also applies to standing. *See Dinerstein*, 73 F.4th at 514.

5

**ARGUMENT**

**I.     Plaintiffs Cannot Establish Article III Standing.**

Plaintiffs cannot establish Article III standing. As the Supreme Court recently reminded, careful consideration of standing is an important tool for "screen[ing] out meritless claims before discovery" in ERISA cases. *Cunningham v. Cornell Univ.*, 604 U.S. 693, 708–09 (2025). Here, Plaintiffs have not demonstrated they have suffered a "concrete, particularized, and actual or imminent injury" fairly traceable to Gallagher. *Dinerstein*, 73 F.4th at 511.

**A.     No Injury-in-Fact.**

*1.     Plaintiffs received the benefits for which they contracted.*

Plaintiffs cannot establish Article III standing because they do not allege that they failed to receive a benefit to which they were entitled. Voluntary benefits, like other group health insurance, are considered defined-benefit plans. *See generally Smith v. Med. Benefit Adm'rs Grp. Inc.*, 639 F.3d 277, 283 (7th Cir. 2011). Unlike a defined-contribution plan, such as a 401(k), in a defined-benefit plan, "[t]he plan participants' benefits are fixed and will not change, regardless of how well or poorly the plan is managed." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 542–43 (2020) (affirming dismissal for lack of standing where the plaintiffs had "received all of their monthly benefit[s]"). As such, courts since *Thole* consistently hold that defined-benefit plan participants who have received all of the benefits to which they are entitled lack Article III standing. *See, e.g., Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 529 (9th Cir. 2023); *Gonzalez de Fuente v. Preferred Home Care of New York LLC*, 858 F. App'x 432, 434 (2d Cir. 2021); *Navarro v. Wells Fargo & Co.*, No. 24-cv-3043, 2026 WL 591454, at *10 (D. Minn. Mar. 3, 2026).

Here, Plaintiffs do not allege that they experienced a qualifying event but were denied benefits contrary to the terms of a Voluntary Benefits policy. Nor do they allege that they paid

6

premiums higher than those required under the policy. The Court should dismiss Plaintiffs' Complaint for this reason alone.

### 2. Plaintiffs do not allege facts in support of excessive premiums.

Plaintiffs' claim that they paid excessive premiums to obtain the Voluntary Benefits, Compl. ¶ 142, is insufficient to establish standing. Crucially, Plaintiffs do not allege that the premiums they paid for the Voluntary Benefits exceeded the typical ranges for comparable products. *Cf.* Compl. ¶¶ 13–16, 107. Courts routinely dismiss claims on standing and other grounds where, as is the case here, Plaintiffs fail to plead adequate comparisons to support allegedly excessive fees. *Cf. Albert*, 47 F.4th at 581–82.

Instead, Plaintiffs manufacture a data point for comparison: commissions as a percentage of premiums. According to Plaintiffs, "[b]ecause broker commissions are paid dollar-for-dollar from premiums, every dollar of excessive commission collected by Gallagher is an out-of-pocket loss for Plaintiffs." Compl. ¶ 147; *see also id*. ¶¶ 143, 149. The Court should disregard this conclusory assertion because it lacks factual support. Plaintiffs do not allege, for instance, any facts regarding *who* sets the Voluntary Benefit premiums or *how* they are determined. Similarly, they do not allege any methodology that Allstate uses to calculate Gallagher's commissions.

Plaintiffs' conclusory assertions mirror those that failed in *Navarro*. There, the plaintiffs asserted that, had their employer negotiated with the plan's pharmacy benefits manager, the plan's "spending would have decreased which necessarily would have reduced the amount they were required to pay in contributions." *Navarro*, 2026 WL 591454, at *9. The *Navarro* court dismissed the original and, later, the amended complaint holding that such allegations are "'general in nature and do not solve the variable of [] discretion in setting employee contribution rates.'" *Id*. (*quoting Winsor*, 62 F.4th at 524); *see also Lewandowski v. Johnson & Johnson*, No. CV 24-671, 2025 WL 3296009, at *5 (D.N.J. Nov. 26, 2025) ("Put simply, it is too speculative that the allegedly

7

excessive fees the Plan paid to its [pharmacy benefits manager] had any effect at all on Plaintiffs' contribution rates[.]") (citation modified).

The *Navarro* plaintiffs "rel[ied] heavily" on their allegation that the employer defendant set participant contributions as a particular percentage of plan costs. *Id*. Here, Plaintiffs do not even allege that Allstate set Gallagher's commissions as a percentage of premiums received. Nor do they allege a methodology by which premiums were set that includes commissions. In fact, according to Plaintiffs' own data, between 2021 and 2022, Gallagher's commissions decreased while premiums increased. Compl. ¶, Table 1. Between 2022 and 2023, Gallagher's commissions increased while premiums decreased. *Id*. And between 2023 and 2024, Gallagher's commissions increased while premiums decreased. *Id*.

Despite these allegations to the contrary, Plaintiffs attempt to imply a relationship by dividing Gallagher's total commissions by participants' total premiums to manufacture the comparison point of commissions as a percentage of premiums. *See* Compl. ¶¶ 158–162. This attempt fails. First, as noted above, Plaintiffs plead no facts to support any relationship between commissions and premiums. Second, even if commissions as a percentage of premiums were a meaningful data point, Plaintiffs fail to sufficiently allege that their comparator plans are actually comparable. *See infra* at III.

In short, Plaintiffs "merely speculate that a decrease in [Gallagher's commissions] necessarily would have resulted in lower [premiums]." *Navarro*, 2026 WL 591454, at *10. Plaintiffs do not plausibly allege a relationship between Gallagher's commissions and participants' premiums. Alleging Gallagher's commission totals—whether as dollar amounts or as a percentage of some other data point—is not enough. "[A] plaintiff's claim of injury in fact cannot be based solely on a defendant's gain; it must be based on a plaintiff's loss." *Silha*, 807 F.3d at 174-75.

8

3. *Plaintiffs do not allege injury stemming from a "loss ratio".*

Finally, Plaintiffs try to establish standing by estimating a loss ratio for the Voluntary Benefits, and claiming that ratio was too low. As an initial matter, Plaintiffs admit that a loss ratio indicates the value (profitability) of a plan *to the insurance company*. Compl. ¶ 87. "The benefits paid to the participants in a defined-benefit plan are not tied to the value of the plan . . . . [P]lan participants possess no equitable or property interest in the plan." *Thole*, 590 U.S. at 543. Plaintiffs do not allege how participating in a plan with a particular loss ratio inherently injures any individual participant. And, as previously described, Plaintiffs do not allege that they, or any other individual Voluntary Benefits participants, were denied benefits to which they were entitled.

Even if Plaintiffs could allege inherent injury from participating in a plan with a loss ratio below a certain threshold, they do not sufficiently allege the Plan's loss ratio here. Plaintiffs allege that "[b]ecause Gallagher's commissions average over 20%, it is impossible for purchasers of the Voluntary Benefits Insurance to obtain better than an 80% loss ratio." Compl. ¶ 146. Setting aside that Plaintiffs cannot support this conclusion because they fail to allege facts showing a one-to-one relationship between commissions and premiums, Plaintiffs then make a giant leap from an 80% loss ratio to lower than 50% loss ratio. Referring only to "industry averages and sources" and inexplicably making a second deduction for "broker compensation," Plaintiffs "estimate" a historical loss ratio of "significantly less than 50%" for CHS's Voluntary Benefits. *Id*. ¶ 147. Such vague and conclusory assertions cannot raise Plaintiffs' right to relief above the speculative level. *See Acosta*, 2019 WL 8301677, at *2. Thus, Plaintiffs' alleged injury is not an injury in fact.

**B. No Harm Fairly Traceable to Gallagher.**

Even if Plaintiffs could establish harm through one of these theories (they cannot), that harm is not fairly traceable to Gallagher. Plaintiffs concede that *CHS* chose the Voluntary Benefits, not Gallagher. *See* Compl. ¶ 112. They also concede that *Allstate*, not CHS or the Plan, paid

9

Gallagher's commissions. *Id*. ¶ 78. Plaintiffs instead imply that had Gallagher not (allegedly) recommended Allstate then Plan fiduciaries would have selected another insurer for the Voluntary Benefits, that insurer would have paid Gallagher (or some other broker or its in-house sales team) lower commissions, and then that insurer would have decided to charge participants lower premiums, and therefore the Voluntary Benefits would have a higher loss ratio. Thus, "Plaintiffs' standing theory hinges on a tenuous chain of events" including "independent action[s] by some third party not before the court." *Cason v. Nat'l Football League Players Ass'n*, 538 F. Supp. 3d 100, 120–121 (D.D.C. 2021) (citation modified) (dismissing because alleged injury was not fairly traceable); *Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 719 F.3d 601, 606 (7th Cir. 2013); *cf. Keach v. U.S. Tr. Co. N.A.*, 313 F. Supp. 2d 818, 865, 870 (C.D. Ill. 2004), *aff'd sub nom*, 419 F.3d 626 (7th Cir. 2005) (where an ERISA trustee has sole authority to approve a decision, that authority breaks any causal chain as to others). Such a "tenuous" theory cannot establish standing as to Gallagher.[3]

## II.     Plaintiffs Fail to Plausibly Allege Gallagher is a Fiduciary.

Counts I and IV also must be dismissed because those counts are actionable only if Gallagher was an ERISA fiduciary for the purposes of offering CHS's Voluntary Benefits or determining its own commissions. But Gallagher was not an ERISA fiduciary. Even assuming the truth of Plaintiffs' allegations, as a broker and consultant, Gallagher did not exercise the necessary discretion or control over the Voluntary Benefits or Plan assets to be an ERISA fiduciary.

A service provider is only an ERISA fiduciary if it is explicitly named as one or if it qualifies as a functional fiduciary. A service provider is a functional fiduciary only if "(i) [it]

---

[3] Plaintiffs' theory is similarly too speculative to be redressable. *See Navarro*, 2026 WL 591454, at *10. Further, Gallagher adopts CHS's argument that Plaintiffs' 502(a)(2) claims are not redressable for the additional reason that relief would inure to the benefit of the Plan, not Plaintiffs. *See* ECF No. 36 at V.

exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) [it] renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) [it] has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A); *see* Compl. ¶ 85 (citing *id*. at (i)). Plaintiffs acknowledge Gallagher is not a named fiduciary, but they claim Gallagher is a functional one.

However, "'to be a fiduciary one must exercise discretionary authority, control or responsibility over the plan or its assets.'" *Acosta*, 2019 WL 8301677, at *3 (quoting *Pappas v. Buck Consultants, Inc.*, No. 89 C 6137, 1989 WL 157517, at *2 (N.D. Ill. Dec. 12, 1989), *aff'd*, 923 F.2d 531 (7th Cir. 1991)). The "terms 'discretionary authority,' 'discretionary control,'" and 'discretionary responsibility' in § 1001(21)(A) [sic] speak[] to actual decision-making power rather than to the influence that a professional may have over the decisions made by the plan trustees she advises." *Pappas*, 923 F.2d at 535. Thus, an entity that acts "only as a broker" with "only [the] discretion . . . to choose which few [products] to recommend to the Plan" does not have "discretion within the meaning of ERISA nor within the meaning of the common sense definition of the term." *Farm King Supply, Inc. Integrated Profit Sharing Plan & Tr. v. Edward D. Jones & Co.*, 884 F.2d 288, 292 (7th Cir. 1989) (affirming court's finding that Jones was not fiduciary following three-day bench trial). Fiduciaries must have "the authority to exercise control *unilaterally* over a portion of a plan's assets, not merely to propose." *Id*. (emphasis added).

Here, Plaintiffs allege only that Gallagher engaged in standard broker-consultant conduct which the Seventh Circuit consistently rejects as insufficient to plead fiduciary status. First, they allege Gallagher "selected and recommended [Allstate] as the insurance carrier," Compl. ¶ 132,

11

including by "selectively withholding information . . . about lower-cost . . . options." *Id*. ¶ 134. However, brokers' common practice of including certain options and omitting others from their recommendations does not create fiduciary status. *Farm King*, 884 F.2d at 292. The Seventh Circuit has made clear that a broker's "activities . . . in setting up [an employer] with [an insurer] or in presenting insurance quotes and making recommendations at the time of renewal are insufficient as a matter of law to render [the broker] a fiduciary[.]" *Klosterman v. W. Gen. Mgmt., Inc.*, 32 F.3d 1119, 1123 (7th Cir. 1994) (affirming entry of summary judgment); *see also Gallagher Corp. v. Massachusetts Mut. Life Ins. Co.*, 105 F. Supp. 2d 889, 894 (N.D. Ill. 2000) (holding "Mass Mutual's role in persuading Gallagher to select Mass Mutual's whole life insurance policies does not amount to an exercise of discretionary authority and therefore does not render Mass Mutual an ERISA fiduciary with respect to those activities" and granting summary judgment). Plaintiffs do not allege that Gallagher exercised the kind of final discretion over insurance carriers or products that would make it a functional fiduciary under 29 U.S.C. § 1002(21)(A)(i) or (iii). *See Pappas*, 923 F.2d at 535. Indeed, they do not allege any discretionary conduct by Gallagher at all.[4]

Second, Plaintiffs allege that "Gallagher is a fiduciary because it was an agent for CHS and for the Plan in procuring and renewing insurance policies and managing claims." Even assuming the truth of these allegations, every agent of the Plan with a common law fiduciary duty is not an *ERISA* fiduciary. *Thole*, 590 U.S. at 549 (Thomas, J., concurring) (ERISA's "statutory definition of a fiduciary departs from the common law.") (citation modified). "[P]roviders of professional services," including those with fiduciary duties related to those services, like consultants, lawyers,

---

[4] This distinguishes this case from those cited in the Complaint. *Cf. Access Servs. Of N. Illinois v. Capitol Adm'rs, Inc.*, No. 19-cv-50050, 2021 WL 780483, at *3 (N.D. Ill. Mar. 1, 2021) ("[A] party must exercise discretion to become a fiduciary—ministerial tasks are not enough. But the allegations claim [defendants] did exercise discretion [regarding the purchase of stop-loss insurance].").

12

actuaries, and accountants, "are not ERISA fiduciaries." *Associates in Adolescent Psychiatry, S.C. v. Home Life Ins. Co.*, 941 F.2d 561, 569–70 (7th Cir. 1991) (affirming summary judgment). Instead, "decision-making authority over the plan or plan assets . . . is essential to status as a fiduciary under ERISA." *Id*. at 570.[5] In fact, alleging Gallagher acted as the Plan's "agent" proves far too much—an agent may act only at the direction of its principal and thus it lacks the requisite independent discretion or control required to be an ERISA fiduciary. *See Acosta*, 2019 WL 8301677, at *4 ("Given that [third-party defendant] was apparently acting under the direction of [the plan administrator], it was not exercising discretionary authority, control or responsibility over the plan or its assets, and was thus not [an ERISA] fiduciary[.]"). Plaintiffs fail to allege that Gallagher had independent decision-making authority in procuring and renewing insurance policies and/or managing claims.

Third, without referring to Gallagher specifically, Plaintiffs generally allege that a "broker can likewise become a fiduciary by setting its own compensation." Compl. ¶ 86. Plaintiffs' generalization is necessary—Gallagher did not act as a fiduciary regarding its own commissions. A service provider is "not a fiduciary when it negotiated at arm's length . . . and did not have control over its compensation." *Scott v. Aon Hewitt Fin., Advisors, LLC*, No. 17 C 679, 2018 WL 1384300, at *8 (N.D. Ill. Mar. 19, 2018) (explaining that courts hold that a "fiduciary's negotiation of its own compensation is a non-fiduciary act as a matter of law"). Plaintiffs do not allege that Allstate gave Gallagher carte blanche to set its own commissions. And any such inference is not plausible. Plaintiffs cannot allege facts that suggest that Gallagher had discretion to unilaterally control its commissions and it cannot be an ERISA fiduciary for that purpose.

---

[5] The D.C. Circuit dicta cited in the Complaint does not hold otherwise. *See Chao v. Day*, 436 F.3d 234, 237 (D.C. Cir. 2006) ("[O]ur holding in this case rests exclusively on ERISA's statutory definition of a 'fiduciary[.]'").

13

Fourth, Plaintiffs allege that "Gallagher acted as a fiduciary by administering and managing the Voluntary Benefits Insurance, including by managing claims, controlling communications, and conducting enrollment." Compl. ¶ 133. Even if these allegations were true (they are not), there is an impermissible disconnect between such conduct and the conduct that Plaintiffs claim constitutes a breach. *See, e.g., Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 471–72 (7th Cir. 2007) (Plaintiffs "must show that [a defendant] was acting in its capacity as a fiduciary at the time it took the actions that are the subject of the complaint."); *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (explaining that the "threshold question" is whether an individual "was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint"). Ministerial tasks related to claims, communications, and enrollment cannot and do not make Gallagher a fiduciary for all purposes. And they certainly do not make Gallagher a fiduciary for the purposes of this Complaint, which relates to the offering of benefits and setting of commissions.[6]

Finally, Plaintiffs try to save their insufficient factual allegations with a conclusory and unsupported paraphrase of ERISA's statutory language. *See* Compl. ¶ 28. The Court should

---

[6] Nor could these ministerial allegations make Gallagher an ERISA fiduciary for *any* purpose. Plaintiffs utterly fail to allege discretion. *Cf.* 29 U.S.C. § 1002(21)(A) (i), (iii). And, to the extent that Plaintiffs suggest that these allegations make Gallagher a functional fiduciary under the plan assets clause of 29 U.S.C. § 1002(21)(A)(i), Plaintiffs are wrong. *Cf.* Compl. ¶ 129 ("[A] broker is a fiduciary if it manages or controls an insurance policy which is an asset of the plan."). Plaintiffs do not (and cannot) allege that Gallagher had actual control over the Allstate policies. Plaintiffs cite one case applying the "plan assets" clause to an insurance policy. Compl. ¶ 129 (citing *Eversole v. Metro. Life Ins. Co.,* 500 F. Supp. 1162, 1165 (C.D. Cal. 1980)). However, the functional fiduciary there was the insurance company that had control over its own policy—not a broker that allegedly conducted ministerial tasks. *See id*.

Plaintiffs' Complaint also cites various inapposite cases involving control over plan monetary assets. *See, e.g.,* Compl. ¶¶ 129-131. However, they do not allege that Gallagher controlled such assets. To the extent that Plaintiffs allege that Gallagher received commissions from premiums which were plan assets, this allegation fails as a matter of law. *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 657 (9th Cir. 2019) ("Premiums paid to an insurance company in return for coverage under a fully insured insurance policy are not 'plan assets.'").

14

disregard this legal conclusion unsupported by any factual allegation suggesting Gallagher's discretionary authority or control over the Plan. *See Iqbal*, 556 U.S. at 679.

## III.     Plaintiffs Fail to Allege Breach of Fiduciary Duty Against Gallagher

Plaintiffs' breach of fiduciary duty claim (Count I) against Gallagher fails for other reasons as well.[7] Plaintiffs allege that Gallagher breached its fiduciary duty by failing to ensure that the commissions Allstate paid Gallagher were "competitive" or "reasonable." *See, e.g.*, Compl. ¶ 196. However, as explained above, Gallagher cannot be a fiduciary in the context of setting its commissions. Further, Plaintiffs fail to allege a meaningful benchmark in support of its allegation of unreasonable commissions.

Plaintiffs must offer more than a general complaint that commissions are too high; it must allege a "sound basis for comparison—a meaningful benchmark." *Albert*, 47 F.4th at 581 (citation modified). And the alleged benchmark must demonstrate that commissions were high relative to services rendered. *See id*. at 580. Here, Plaintiffs allege neither. Instead, Plaintiffs manufacture a data point, commissions as a percentage of premiums, without any accompanying allegations to support an actual relationship between the two. But, even taking Plaintiffs' calculation at face value, Gallagher's commissions at approximately 22 percent of premiums are *on the low end* of the alleged typical range of 15 to 55 percent. *See* Compl. ¶¶ 81, 137. Attempting to portray Gallagher's CHS commissions as an outlier, Plaintiffs also cherry-pick three other plans as purported comparators. *See* Compl. ¶¶ 159-162. Plaintiffs, however, fail to allege that Gallagher provided similar services to those plans or that their coverage was similar. *See Albert*, 47 F.4th at

---

[7] Plaintiffs do not bring a separate count alleging co-fiduciary liability; instead, they allude to it in Count I without alleging its required elements. *See* Compl. ¶ 200. However, any co-fiduciary claim fails for the same reasons Counts I and IV fail: Plaintiffs do not sufficiently allege that Gallagher is an ERISA fiduciary, a predicate fiduciary breach by CHS, and/or Gallagher's knowledge of CHS's alleged predicate breach. *See supra* at II; *infra* at V.

579–82 (dismissing for insufficient comparators where complaint was "devoid of allegations as to the quality or type of recordkeeping services the comparator plans provided"); *cf. Navarro*, 2026 WL 591454, at *4 (dismissing even where the plaintiffs amended to allege the defendant and comparator's service codes as documented in Forms 5500). As to coverage, Plaintiffs admit that the purported comparator plans used different carriers, but do not allege that these different carriers provided the same coverage as Allstate. *See* Compl. ¶¶ 159–162. For example, Plaintiffs ignore the fact that CHS's Voluntary Benefits include cancer coverage, while the purported comparators' plans do not. *Id*. Plaintiffs also admit the fact that its comparator plans covered fewer individuals, but fail to address how this significant difference would have impacted the services that Gallagher provided. *Id*. Thus, Plaintiffs fail to provide the required "sound basis for comparison" or "meaningful benchmark." *Albert*, 47 F.4th at 581 (citation modified).

## IV.    Plaintiffs Fail to Allege that Gallagher Engaged in a Prohibited Transaction.

Plaintiffs fail to plausibly allege in Count IV that Gallagher engaged in a transaction involving plan assets. Plaintiffs allege that Gallagher engaged in a prohibited transaction because it "collect[ed] excessive commissions and other payments from Plan assets[.]" Compl. ¶ 224. However, Plaintiffs cannot specifically allege that Gallagher received its commissions "in connection with a transaction involving the assets of the plan" or that it otherwise "deal[t] with the assets of the plan in [its] own interest or for [its] own account." *See* 29 U.S.C. § 1106(b)(1), (3).

Plaintiffs do not (and cannot) plausibly allege that Allstate pays Gallagher's commissions directly from Plan assets. Instead, they vaguely imply that participants' premiums and/or Gallagher's commissions are Plan assets. *See, e.g.*, Compl. ¶ 243. However, Plaintiffs specifically allege that Gallagher's commissions are paid by *Allstate*—not the *Plan*. Compl. ¶ 78. And Plaintiffs do not and cannot allege that they paid Voluntary Benefits premiums to anyone other than the insurer, Allstate. Assuming that participants paid premiums to Allstate, "[p]remiums paid

16

to an insurance company in return for coverage under a fully insured insurance policy are not 'plan assets.'" *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 657 (9th Cir. 2019). "Premiums paid under a fully insured plan are not held in trust; rather, they are 'fixed fee[s]' paid in exchange for the insurance company 'assum[ing] the financial risk of providing the benefits promised.'" *Depot,* 915 F.3d at 659 (quoting *Pegram*, 530 U.S. at 218–19). Thus, once Allstate received participants' premiums, participants no longer "maintained any sort of property interest in them" and they were no longer plan assets. *Id.* Because Gallagher obtained its commissions from Allstate, such transactions did not involve plan assets and Gallagher never dealt with plan assets as a result of receiving commissions. *See* Compl. ¶ 78.

Plaintiffs' prohibited transaction claim fails for an additional reason: Plaintiffs' own allegations make clear that Gallagher's commissions were within the typical range. A transaction is not prohibited under ERISA simply because a service provider was paid for its work. In fact, the prohibited transaction rules contain an express exemption if a service provider receives reasonable compensation. 29 U.S.C. § 1108. While a plaintiff need not disprove the exemption in a complaint and on a motion to dismiss, this rule does not alter the applicability of the exemption on a motion to dismiss when the plaintiff has affirmatively pled facts showing the reasonableness of the service provider compensation. *See Holmes v. Marion Cnty. Sheriff's Off.*, 141 F.4th 818, 822 (7th Cir. 2025), *reh'g denied*, No. 22-3032, 2025 WL 2078828 (7th Cir. July 23, 2025) (Where an affirmative "defense is clear from the face of the complaint . . . the complaint fails to state a claim[.]"); *cf. Cunningham*, 604 U.S. at 709 (holding "that plaintiffs seeking to state a § 1106(a)(1)(C) claim must plausibly allege that a plan fiduciary engaged in a transaction proscribed therein, no more, no less"). Here, Plaintiffs alleged more—that voluntary benefits brokers typically receive commissions of "15 percent to 55 percent [of premiums], depending on the line of

insurance offered." Compl. ¶ 81 (citation modified). Plaintiffs calculate Gallagher's total commissions to be 22.65% of premiums, which is within the *lower* half of this range. Compl., Table 1. Plaintiffs thus allege only that Gallagher was paid a typical commission—Plaintiffs' prohibited transaction claim fails.

## V.      Plaintiffs' Knowing Participation Claims Also Fail.

Plaintiffs' non-fiduciary knowing participation claims (Counts V and VI) against Gallagher likewise fail. Plaintiffs allege that Gallagher knowingly participated in Plan fiduciaries' alleged imprudence and prohibited transactions. This claim requires Plaintiffs to plead (1) a qualifying ERISA violation[8] and (2) Gallagher's knowing participation in that violation. *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 248 (2000). As to the latter, Plaintiffs must allege "'more than mere knowledge of a []fiduciary's act or omission; it requires actual knowledge that it is a breach.'" *Mejia v. Verizon Mgmt. Pension Plan*, No. 11 C 3949, 2012 WL 1565336, at *12 (N.D. Ill. May 2, 2012) (quoting Peter J. Wiedenbeck, *ERISA: Principles of Employee Benefit Law* 118 n. 40 (2010)) (dismissing knowing participation claim against non-fiduciary). Moreover, because a knowing participation claim is equitable in nature, a plaintiff may only obtain equitable relief in the form of a return of plan assets. *See Harris*, 530 U.S. at 250 (explaining that a knowing participation claim is limited to equitable relief).

First, Plaintiffs ask for legal damages as opposed to equitable relief. Plaintiffs nominally seek "equitable remedies . . . such as restitution, disgorgement, or a constructive trust." Compl. ¶ 237. However, Plaintiffs go further, alleging that "ERISA plan assets or improper profits rightfully belong to Plaintiffs and class members." *Id*. ¶ 236. Thus, "Plaintiffs seek a judgment to obtain

---

[8] Gallagher adopts CHS's arguments regarding the deficiencies of Counts I and III against CHS. *See* ECF No. 36 at III and IV. Because the predicate claims against CHS fail, so too do Plaintiffs' knowing participation claims against Gallagher.  *See Scott*, 2018 WL 1384300, at *14.

money from defendants . . . a classic form of *legal* relief." *Depot*, 915 F.3d at 661 (citation modified).

To the extent that Plaintiffs actually seek disgorgement of plan assets, their own pleading shows they cannot obtain that relief from Gallagher. Plaintiffs do not seek identifiable or traceable funds consisting solely of their premiums. *See id*. at 661–65. Indeed, Plaintiffs do not even allege to whom they paid premiums. To the extent that Plaintiffs paid premiums to non-party Allstate, who in turn paid Gallagher's commissions, the premiums had ceased being plan assets and Plaintiffs do not "explain why they are entitled to repayment of [commission] funds that originated with" Allstate. *Neil v. Zell*, No. 08 C 6833, 2010 WL 3167293, at *2 (N.D. Ill. Aug. 9, 2010) (granting judgment on the pleadings as to "all claims for relief in the nature of returning property that originated with [a non-party] because the court cannot order relief that would involve repayment of funds that originated with [the non-party]"); *Depot*, 915 F.3d at 659.

Second, Plaintiffs do not plausibly plead Gallagher's knowledge. Plaintiffs curiously base their claim on the allegation that Gallagher "knew that *its own course* of conduct described herein was unlawful." Compl. ¶¶ 234, 242 (emphasis added). But Plaintiffs do not explain how a defendant can knowingly participate in *its own* alleged violation. Plaintiffs' additional allegation that Gallagher "knew of the circumstances that rendered" CHS's conduct unlawful also fails because it lacks factual support. *Id.*

As to Count V, Plaintiffs implausibly allege that Gallagher knew that "the Plan fiduciaries were failing to monitor and control premiums or broker commissions for the Voluntary Benefits Insurance." *Id*. ¶ 235. Plaintiffs fail to allege why Gallagher would be aware of the Plan fiduciaries' internal monitoring of its commissions. As a non-fiduciary, Gallagher had no duty to monitor CHS's monitoring of its commissions. To the extent that Plaintiffs rely on Gallagher's knowledge

19

of how much it received in commissions, that can only demonstrate Gallagher's knowledge of Allstate's conduct, not the Plan fiduciaries' conduct. And, even if knowledge that it received commissions could alert Gallagher to an act or omission by Plan fiduciaries, without more, it does not raise the inference that Gallagher knew such conduct constituted an ERISA violation. *See Mejia*, 2012 WL 1565336, at *12.

As to Count VI, Plaintiffs allege that Gallagher knew that plan fiduciaries "caused the Plan to engage in a transaction with Gallagher." *See, e.g.*, Compl. ¶¶ 242–45. But Plaintiffs fail to plausibly allege such a transaction or that Gallagher knew it was *unlawful*. *See Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*, No. 17-CV-07243-BLF, 2019 WL 6841222, at *6 (N.D. Cal. Dec. 16, 2019) (holding that, because many routine transactions are exempted, "mere knowledge that a transaction is (or might be) 'prohibited' under ERISA . . . does not mean that [defendants] knew or should have known of any wrongdoing, as required under *Harris*."). Plaintiffs allege only that Gallagher transacted with Allstate, not the Plan, and they do not even attempt to show that Gallagher knew *that* transaction involved plan assets (it didn't) or otherwise was prohibited, let alone unlawful. For these reasons, both knowing participation counts should be dismissed.

## VI. Conclusion

This Court should grant Gallagher's Motion and dismiss all claims against it with prejudice.[9]

---

[9] *See Esco v. City of Chicago*, 107 F.4th 673, 683 (7th Cir. 2024) ("District courts have broad discretion to deny leave to amend the pleadings where the amendment would be futile."); *see also Guise v. BWM Mortg., LLC*, 377 F.3d 795, 801 (7th Cir. 2004) (affirming denial of leave to amend).

Dated: March 27, 2026

Respectfully submitted,

*/s/ J. Christian Nemeth*
J. Christian Nemeth (ARDC No. 6276708)
jcnemeth@mcdermottlaw.com
McDermott Will & Schulte LLP
444 W. Lake St, Suite 4000
Chicago, IL 60606
Phone: (312) 372-2000

*Attorney for Defendant Gallagher Benefit Services, Inc.*

21

## CERTIFICATE OF SERVICE

I, J. Christian Nemeth, an attorney, hereby certify that on March 27, 2026, I caused a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** to be electronically filed with the Clerk of Court using CM/ ECF, which will serve all counsel of record.

/s/ J. Christian Nemeth
J. Christian Nemeth
McDermott Will & Schulte LLP